BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Guy C. Nicholson (State Bar No. 106133)
  gnicholson@bgrfirm.com
Kim S. Zeldin (State Bar No. 135780)
  kzeldin@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendants Browne George
Ross LLP, Eric M. George, and Maribeth
Annaguey

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PAUL O. PARADIS,<br><br>          Plaintiff,<br><br>    vs.<br><br>ELLEN PANSKY, PANSKY MARKLE ATTORNEYS AT LAW, MARIBETH ANNAGUEY, ERIC M. GEORGE, BROWNE GEORGE ROSS LLP and DEFENDANTS DOES 1-100,<br><br>        Defendants. | Case No. 2:20-cv-09660-VAP-JCx<br><br>**DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S NOTICE OF MOTION AND MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Virginia A. Phillips<br>Date:    April 12, 2021<br>Time:   2:00 p.m.<br>Crtrm.: 8A<br><br>Trial Date:  None Set |

1686401.9

Case No. 2:20-cv-09660
DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION
TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 12, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Virginia A. Phillips, United States District Judge, in the above-entitled Court, located at the 350 W. 1st Street, Los Angeles, California 90012, Courtroom 8A, Defendants Browne George Ross O'Brien Annaguey & Ellis LLP (sued under its former name, Browne George Ross LLP), Eric M. George, and Maribeth Annaguey (the "BGR Defendants"), will and hereby do move the Court for an order striking Plaintiff Paul O. Paradis's complaint (as amended and corrected), dismissing the action with prejudice, and awarding the BGR Defendants their attorneys' fees and costs.

This special motion to strike is made pursuant to California Code of Civil Procedure section 425.16 (California's anti-SLAPP statute) on the grounds that:

(1)     Mr. Paradis's complaint, and each claim alleged therein against the BGR Defendants arises from protected activity in that:

(a)     The claims against the BGR Defendants arise from a writing made before a judicial body.  Cal. Civ. Proc. Code § 425.16(e)(1); or

(b)     The complaint and each claim alleged therein against the BGR Defendants arises in connection with an issue under consideration or review by a judicial body.  Cal. Civ. Proc. Code § 425.16(e)(2).

(2)     Mr. Paradis cannot establish a probability that he will prevail on the claims in his complaint against the BGR Defendants (*i.e.*, (a) Count I (Violation of Invasion of Privacy By False Light – Actual Malice; (b) Count II (Violation of Invasion of Privacy By False Light – Negligence; (c) Count VI (Defamation – Actual Malice); (d) Count VII (Defamation – Negligence); (e) Count XII (Defamation – Actual Malice-Special Damages); (f) Count XIII (Defamation – Negligence-Special Damages); and (g) Count XVII (Defamation – Actual Malice-Punitive Damages)) because:

(a)     Mr. Paradis's claims are barred by the litigation privilege set forth in California Civil Code section 47(b); or

1          (b)    Mr. Paradis's claims are based on subjective opinions and are not

2   actionable.

3       This Motion is based on this Notice of Motion, the attached Memorandum of

4   Points and Authorities, the Request for Judicial Notice and the exhibits submitted

5   therewith, pleadings, papers, and records on file in this action, and upon such other

6   evidence and argument as the Court may allow.

7       Following the Court's ruling on this Motion, the BGR Defendants will seek an

8   award of their attorneys' fees and costs, pursuant to California Code of Civil

9   Procedure section 425.16(c). *Anderson v. City of Rialto*, No. EDCV 16-1915 JGB

10  (SPx), 2017 WL 10562687, at *3 (C.D. Cal. Aug. 8, 2017) ("In general, the party

11  prevailing on a special motion to strike may seek an attorney fees award through three

12  different avenues:  simultaneously with litigating the special motion to strike, by a

13  subsequent noticed motion, or as part of a cost memorandum at the conclusion of the

14  litigation."); *Christie v. Lester*, No. CV 14-08993-RGK (FFMx), 2015 WL 13439821

15  at *1 (C.D. Cal. June 15, 2015) (motion for attorneys' fees filed and considered after

16  court's grant of motion to strike).

17      The BGR Defendants, on January 29, 2021, sent Mr. Paradis a letter by

18  electronic mail and United States mail setting forth the factual and legal basis

19  supporting the instant Motion and requesting that he meet and confer pursuant to

20  Local Rule 7-3.

21  DATED:  March 8, 2021        BROWNE GEORGE ROSS
                                  O'BRIEN ANNAGUEY & ELLIS LLP

22                                       Guy C. Nicholson

23                                       Kim S. Zeldin

24   

25                    By:      */s/ Guy C. Nicholson*

26                                Guy C. Nicholson
                       Attorneys for Browne George Ross LLP, Eric M.
                       George, and Maribeth Annaguey

27   

28   

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.   INTRODUCTION ...............................................................................................1

II.  STATEMENT OF FACTS ..................................................................................2

    A.   The *PwC* And *Jones* Actions ..................................................................2

    B.   The City Engages Ms. Pansky In Response To The State Court's Request That The City Initiate An Ethics Inquiry ....................................3

    C.   In March 2019, Mr. Paradis's Lawyers Allegedly Provide Documents To Ms. Pansky, Mr. George, And Ms. Annaguey .................6

    D.   The Pansky Report Is Published On October 23, 2019 .........................6

    E.   The Instant Complaint Is Filed On October 21, 2020 ............................8

III. MR. PARADIS'S SLAPP SUIT SHOULD BE STRICKEN ...........................10

    A.   Legal Standards Governing Anti-SLAPP Motions ...............................10

    B.   Mr. Paradis's Claims Arise From Protected Activity ...........................12

    C.   Mr. Paradis Cannot Establish A Probability Of Success On the Merits ....................................................................................................14

        1.   Each Claim Is Barred By The Litigation Privilege .....................14

        2.   The Allegedly Defamatory Statements Are Non-Actionable Opinions ......................................................................................16

IV.  CONCLUSION .................................................................................................17

1686401.9

-i-

Case No. 2:20-cv-09660

DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>FEDERAL CASES</u>

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................11

*Grant & Eisenhofer, P.A. v. Brown*,
  No. 17-cv-5968-PSG, 2017 WL 6343506 (C.D. Cal. Dec. 6, 2017) .....................15

*Grant v. U.S.*,
  No. 2:11-cv-00360 LKK, 2011 WL 2367656 (E.D. Cal. June 9, 2011) .................14

*Karimi v. Golden Gate Sch. of Law*,
  361 F. Supp. 3d 956 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir.
  2020) ....................................................................................................14

*Kulkarni v. Upasani*,
  659 F. App'x 937 (9th Cir. 2016)............................................................15

*Lauren Sun v. Siemens AG*,
  No. CV 10-00174 SJO, 2010 WL 11549643 (C.D. Cal. Aug. 4, 2010),
  *amended sub nom. Sun v. Siemens AG*, No. CV 10-00174 SJO, 2010 WL
  11549644 (C.D. Cal. Oct. 27, 2010) .......................................................15

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ...........................................................11, 14

*Mandel v. Hafermann*,
  No. 20-cv-03668-JSC, 2020 WL 7025092 (N.D. Cal. Nov. 30, 2020).................13

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ................................................................10

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................................16

*Newberry v. Fiberglass Structural Eng'g Inc.*,
  298 F. App'x 615 (9th Cir. 2008)...........................................................15

*Novel v. Los Angeles County Sheriff's Dept.*,
  No. 2:19-cv-01922-RGJ-AGR, 2019 WL 6448955
  (C.D. Cal. Aug. 20, 2019) ....................................................................17

DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION
TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

# <u>TABLE OF AUTHORITIES</u>
## (Continued)

**Page**

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018),
  and *cert. denied sub nom.  Ctr. for Med. Progress v. Planned Parenthood
  Fed'n of Am.*, 139 S. Ct. 1446 (2019) ....................................................................11

*Resolute Forest Products v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017)....................................................................16

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of CA v.
  Yagman*, 55 F.3d 1430 (9th Cir. 1995)......................................................................17

*Tasso v. Platinum Guild Int'l*,
  No. 94 CIV. 8288 (LAP), 1998 WL 841489 (S.D.N.Y. Dec. 3, 1998)...................17

*Tensor Law P.C. v. Rubin*,
  No. 2:18-cv-01490-SVW-SK, 2019 WL 3249595 (C.D. Cal. Apr. 10,
  2019) ...............................................................................................................10, 12

*Verizon Delaware, Inc. v. Covad Comms. Co.*,
  377 F.3d 1081 (9th Cir. 2004) ...........................................................................10, 17

**<u>STATE CASES</u>**

*Briggs v. Eden Council for Hope and Opportunity*,
  19 Cal. 4th 1106 (1999)....................................................................................11, 12

*Chavez v. Mendoza*,
  94 Cal. App. 4th 1083 (2001) ...................................................................................11

*Dziubla v. Piazza*,
  59 Cal. App. 5th 140 (2020)......................................................................................15

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
  238 Cal. App. 4th 200 (2015) ...................................................................................13

*Gallanis-Politis v. Medina*,
  152 Cal. App. 4th 600 (2007) ...................................................................................13

*Gootee v. Lightner*,
  224 Cal. App. 3d 587 (1990) .....................................................................................16

<u>**TABLE OF AUTHORITIES**</u>
**(Continued)**

**Page**

*Jackson v. Mayweather*,
   10 Cal. App. 5th 1240 (2017)...................................................................14

*James v. San Jose Mercury News, Inc.*,
   17 Cal. App. 4th 1 (1993)......................................................................17

*JSJ Ltd. P'ship v. Mehrban*,
   205 Cal. App. 4th 1512 (2012)...............................................................13

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002)............................................................14, 16

*Moore v. Conliffe*,
   7 Cal. 4th 634 (1994).............................................................................15

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002).............................................................................11

*Neville v. Chudacoff*,
   160 Cal. App. 4th 1255 (2008)...............................................................13

*Obos v. Scripps Psychological Assocs., Inc.*,
   59 Cal. App. 4th 103 (1997)...................................................................15

*Okorie v. L.A. Unified Sch. Dist.*,
   14 Cal. App. 5th 574 (2017)...................................................................11

*Olszewski v. Scripps Health*,
   30 Cal. 4th 798 (2003)...........................................................................15

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
   18 Cal. App. 5th 95 (2017).....................................................................15

*Ramalingam v. Thompson*,
   151 Cal. App. 4th 491 (2007).................................................................16

*Rohde v. Wolf*,
   154 Cal. App. 4th 28 (2007)...................................................................13

*Savage v. PG&E*,
   21 Cal. App. 4th 434 (1993)...................................................................17

DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION
TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ................................................................15

*Wang v. Heck*,
   203 Cal. App. 4th 677 (2012) .....................................................16

**STATE STATUTES**

Cal. Civ. Code
   § 47(b) ..................................................................2, 14, 16

Cal. Civ. Proc. Code
   § 425(e)(1) .........................................................................13
   § 425(e)(2) .........................................................................13
   § 425.16 ........................................................................1, 11
   § 425.16(a) ..................................................................10, 11
   § 425.16(e) ........................................................................12
   § 425.16(e)(1) ...................................................................12
   §425.16(e)(2) ....................................................................12

**RULES**

Fed. R. Civ. Proc.
   Rule 12(b)(6) ....................................................................11

DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION
TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

California enacted its anti-SLAPP statute, Code of Civil Procedure section 425.16, to deter precisely the type of lawsuit being prosecuted here: one for alleged defamation and false light claims arising solely from opinions contained in an expert's report, which was lodged with a court in connection with ongoing civil litigation.

Prior to the events alleged in the complaint, Plaintiff Paul O. Paradis represented the City of Los Angeles (the "City") in an action filed in the Los Angeles Superior Court (the "State Court") entitled *City of Los Angeles v. PricewaterhouseCoopers, LLP* (the "*PwC* Action"). Subsequent to his withdrawal as the City's special counsel in that lawsuit, Mr. Paradis filed this lawsuit against his successor counsel, Browne George Ross LLP ("BGR") and two of its partners, Eric M. George and Maribeth Annaguey, seeking over $5 million in tort damages solely because he disagrees with the opinions expressed in an expert report authored by Ellen Pansky (the "Pansky Report"). The Pansky Report was "published" on October 23, 2019, when it was lodged by BGR, on the City's behalf, with the State Court presiding over the settlement of a class action lawsuit known as *Antwon Jones v. The City of Los Angeles* (the "*Jones* Action").

The Pansky Report was commissioned in response to a request by the State Court that the City conduct an ethics investigation into possible conflicts of interest based on evidence suggesting that Mr. Paradis may have simultaneously represented the City in the *PwC* Action while also secretly representing the plaintiff in the *Jones* Action against the City. Before the Pansky Report was lodged with the State Court in the *Jones* Action, Mr. Paradis had already asserted his Fifth Amendment right against self-incrimination to avoid testifying during his court-ordered deposition concerning those subjects.

1       The gravamen of this action for defamation and false light is Mr. Paradis's

2   disagreement with four statements in the Pansky Report, in which Ms. Pansky opines

3   that Mr. Paradis had a conflict of interest when he simultaneously represented the

4   City and Mr. Jones without written waivers from the City and Mr. Jones.  Although

5   Mr. Paradis does not (and cannot) allege that he actually had obtained a written

6   conflict waiver, he nevertheless contends that Ms. Pansky should have believed his

7   story that the City supposedly knew all along what he was doing and therefore, opined

8   that he had not violated the California Rules of Professional Conduct.

9       The freedom of a lawyer to act on behalf of a client (the City in this instance)

10  by lodging an expert report with a court in connection with an investigation into the

11  fairness of a class action settlement falls directly within the types of activities the

12  California anti-SLAPP law was designed to protect.  The report and its filing are also

13  protected by California Civil Code section 47(b), which codifies the absolute

14  litigation privilege, shielding publications made in any judicial proceeding.  Mr.

15  Paradis's claims also fail because the alleged defamatory statements in the Pansky

16  Report are her opinions and therefore, not actionable as a matter of law.

17  **II.**   **STATEMENT OF FACTS**

18      **A.**   **The *PwC* And *Jones* Actions**

19      In 2010, the City entered into a contract with PricewaterhouseCoopers, LLC

20  ("PwC") whereby PwC agreed to develop and implement a new customer care and

21  billing system ("CC&B System") for the City's Department of Water and Power.

22  ECF 5, ¶ 13.  PwC's implementation of the system was "disastrous, [], and resulted in

23  an overwhelming number of delayed, inconsistent and inaccurate bills."  *Id.* at ¶ 14.

24  On March 6, 2015, the City sued PwC alleging, *inter alia*, that PwC breached its

25  contract with the City and fraudulently induced the City to select PwC to implement

26  the new billing system.  *Id.* at ¶ 15.  Until March 2019, Mr. Paradis and Paul Kiesel

27  represented the City as "Special Counsel" in that case.  *Id.* at ¶ 16.

28

On April 1, 2015, Mr. Jones filed the *Jones* Action alleging he and other consumers were harmed as a result of overcharges caused by the CC&B System. *Id.* at ¶ 18. The *Jones* and *PwC* Actions were deemed related and assigned to the Honorable Judge Elihu M. Berle. *Id.* at ¶ 15. In August 2015, the City reached a class action settlement in the *Jones* Action (the "*Jones* Settlement") pursuant to which, *inter alia*, the City would refund all overcharges to customers and implement various safeguards to prevent a recurrence of the billing problems. *Id.* at ¶ 19.

On July 20, 2017, the State Court issued an "Order Granting Final Approval Of Class Action Settlement And Final Judgment" ("Final Judgment"). RJN Ex. 3. The State Court also retained jurisdiction to oversee the implementation of the *Jones* Settlement (RJN Ex. 3 (Final Judgment, p. 9)), and since then has regularly held status conferences and other proceedings in that regard (RJN Ex. 2 (docket sheet)).

## B.   The City Engages Ms. Pansky In Response To The State Court's Request That The City Initiate An Ethics Inquiry

At the end of 2018, facts emerged suggesting that while serving as Special Counsel in the *PwC* Action, Mr. Paradis simultaneously represented the plaintiff in the *Jones* Action. ECF 5, ¶¶ 27-28. Beginning in December 2018, the State Court began to actively evaluate the nature and breadth of the relationship between Mr. Paradis, on the one hand, and counsel of record for the *Jones* class, Jack Landskroner, on the other hand, and the impact, if any, that any potential conflict of interest may have had on the fairness of the *Jones* Settlement. RJN Ex. 12 (12/12/2018 Tr. at 9:25-10:1, 25:27-26:7, 28:25-29:11, 41:24-43:10) and RJN 2 (docket sheet).

On January 23, 2019, PwC's counsel, Daniel Thomasch, advised the State Court that Mr. Paradis had taken the position that communications between Mr. Jones and the City (two adversaries) were protected by a common interest privilege. RJN Ex. 13 (1/23/2019 Tr. at 16:6-24:28). The State Court expressed concern over how a common interest privilege could possibly exist between adversaries, and asked Mr. Kiesel to have the City initiate an ethics inquiry into potential conflicts of interest

involving the attorneys representing the City in the *PwC* Action and the attorneys

representing the *Jones* class. *Id*. (Tr. at 25:3-27:6). Mr. Paradis was one of the targets

of that inquiry. *Id*.

   During a hearing on March 4, 2019, the State Court inquired of Mr. Landskroner

whether he had shared any portion of the attorneys' fees he received in connection

with the *Jones* Settlement with any attorney representing the City. RJN Ex. 14

(3/4/2019 Tr. at 28:20-29:18). Mr. Landskroner asserted his Fifth Amendment rights

and declined to respond. *Id*. The State Court immediately ordered the City to cease all

further payments to Mr. Paradis and Mr. Landskroner or "any company in which

Mr. Landskroner or Mr. Paradis have an interest." *Id*. (Tr. at 67:26-68:1). He further

ordered Messrs. Paradis and Landskroner to immediately appear for depositions at the

courthouse. ECF 5, ¶ 30; RJN Ex. 14 (3/4/2019 Tr. at 66:19-67:12).

   On March 6, 2019, Messrs. Paradis and Kiesel withdrew as Special Counsel in

the *PwC* Action*,* and were replaced by BGR, Mr. George, and Ms. Annaguey. ECF 5,

¶ 33. Mr. Landskroner filed a motion to withdraw as class counsel, citing ethical

issues. RJN Exs. 4-6. On or before March 12, 2019, Mr. Paradis learned that Ms.

Pansky had been "hired by the City" to conduct an investigation regarding the

potential conflicts of interest. ECF 5, ¶¶ 36-37.

   On March 18, 2019, Mr. George advised the State Court that the ethics inquiry

was underway and that the State Court would be advised of the results at the earliest

opportunity. RJN Ex.11 (3/18/2019 Tr. at 4:1-6:26).[1] During his court-ordered

deposition on April 3, 2019, Mr. Paradis asserted the Fifth Amendment and refused to

---

[1]   Mr. Paradis alleges that "[i]n response to Gibson Dunn's attacks, the City directed
Defendant Browne George [Ross] LLP to retain the services of attorney and legal
ethicist Ellen Pansky . . . ." ECF 5, ¶ 35. This allegation incorrectly implies that
BGR (rather than the City) engaged Ms. Pansky. The complaint also falsely implies
that BGR had (or exercised) influence over Ms. Pansky's report and her opinions. *Id*.
at ¶¶ 40-43. The BGR Defendants deny these speculative allegations and will easily
dispose of them if the complaint survives this motion and the contemporaneously-
filed motion to dismiss.

answer any questions, including questions pertinent to whether he accepted money from Mr. Landskroner.  RJN Ex. 7 (4/3/2019 deposition transcript) and RJN Ex. 10 (Joint Notice of Lodging of Deposition Transcripts per Court Order).

In April and June of 2019, the State Court selected Brian S. Kabateck as new Class Counsel and Edward M. Robbins, Jr. as the Special Master.  The State Court ordered Mr. Kabateck to "focus on the class, that is, to protect the class and its rights which may include an investigation as to how the settlement was arrived at and an analysis as to whether the settlement of the class action was fair, reasonable, and adequate under all circumstances."  RJN Ex. 8 (5/7/2019 Order, ¶ 4).  It further ordered Mr. Robbins to assist the State Court in "determining the full extent of any violations surrounding" the *Jones* Settlement and to conduct an audit of payments made to various individuals, including Mr. Paradis.  RJN Ex. 9 (6/17/2019 Order, p. 2:3).

As promised, BGR lodged the Pansky Report with the State Court in the *Jones* Action on October 23, 2019.  ECF 5, ¶ 45; RJN Ex. 1 (Pansky Report).  As explained in the Notice of Lodging:  "pursuant to the Court's January 23, 2019 request for an internal ethics inquiry, and [Mr. George's] March 18, 2019 statements to the Court that the requested inquiry was underway and that the resulting report would be provided to the Court, the City . . . ., hereby lodges the completed Report Of Ellen A. Pansky Regarding Legal Ethics Issues In Connection With *Antwon Jones v. City of Los Angeles*, dated October 22, 2019."  RJN Ex. 1 (Pansky Report).[2]

New Class Counsel, Mr. Kabateck, subsequently filed a report with the State Court also concluding that while Mr. Paradis had a conflict of interest, the *Jones* Settlement nevertheless was fair, reasonable and adequate.  Like Ms. Pansky, Mr. Kabateck did not reach a conclusion as to whether Mr. Paradis had received a secret

---

[2]  Mr. Paradis does not allege that the Pansky Report was published other than in the State Court on October 23, 2019.  ECF 5, ¶ 45.

1  payment from Mr. Landskroner. Mr. Robbins has also filed a report with the State

2  Court under seal. RJN Ex. 2 (docket sheet).

3  **C.** **In March 2019, Mr. Paradis's Lawyers Allegedly Provide**

4  **Documents To Ms. Pansky, Mr. George, And Ms. Annaguey**

5  Mr. Paradis alleges that in or about March 2019, he "instructed his counsel" to

6  speak with Ms. Pansky on March 12, 2019, and Mr. George and Ms. Annaguey on

7  March 14, 2019, and provided them with documents allegedly showing that (1) Mr.

8  Paradis's actions were undertaken with the City's knowledge, and (2) James P. Clark

9  (a former, now retired, senior member of the Los Angeles City Attorney's Office) and

10  Mel Levine ("Levine") (the President of the LADWP Board of Commissioners) had

11  conflicts of interest of their own. ECF 5, ¶ 36, 55.

12  Mr. Paradis alleges that Ms. Pansky, Mr. George, and Ms. Annaguey "turned a

13  willful blind eye," by deliberately ignoring his argument that he was not a "rogue

14  actor." *Id.* at ¶¶ 57, 73. Unsurprisingly, the complaint is devoid of allegations

15  showing the documents his counsel supposedly provided required the conclusion that

16  his contentions were to any degree trustworthy.

17  **D.** **The Pansky Report Is Published On October 23, 2019**

18  Ms. Pansky's 150 page expert report is organized into sections that include:

19  (1) a description of her assignment and scope of review, (2) her qualifications, (3) the

20  documents she reviewed, (4) a summary of her understanding of the relevant facts,

21  (5) an executive summary of her analysis and opinions, (6) a more detailed and

22  comprehensive statement of her analysis and opinions, and (7) a summary of her

23  conclusions. RJN Ex. 1 (Pansky Report, p. i). Despite Mr. Paradis's speculation that

24  the BGR Defendants had something to do with the contents or preparation of the

25  Pansky Report (ECF 5, ¶¶ 58, 72, 102, 107, 132, 137, 157), the Pansky Report in no

26  way supports that supposition.

27  In describing her assignment and the scope of her review, Ms. Pansky states

28  that she was retained by the City to "analyze, evaluate and opine regarding the

1  conduct of all of the attorneys acting under the auspices of the Los Angeles City

2  Attorney's office" in connection with the *Jones* or *PwC* Actions.   RJN Ex. 1 (Pansky

3  Report, p. 1).   She explains that the opinions expressed in her report are not based on

4  conducting independent discovery or interviews of percipient witnesses, relying on

5  formal discovery in the *PwC* Action.  *Id.* (Pansky Report, pp. 2-3).   She further states

6  that in some instances she had to assume the truth of some of the disputed facts and in

7  other instances provided alternate conclusions, based on which version of the facts the

8  trier of fact may accept as true.  *Id.* (Pansky Report, p. 3).[3]

9        Ms. Pansky sets forth a summary of the numerous documents, pleadings,

10  transcripts of court proceedings and deposition transcripts she reviewed.  Those

11  materials included Mr. Paradis's deposition transcript of April 3, 2019, in which he

12  asserted his right against self-incrimination to avoid testifying under oath as to, *inter

13  alia*, his relationship with Mr. Landskroner.  *Id.* (Pansky Report, p. 8, ¶ PP).

14        In the summary of facts section of her report, Ms. Pansky points to the

15  December 9, 2014 written attorney-client fee agreement between Mr. Jones and the

16  Paradis Law Group (produced by Mr. Jones) and Mr. Jones's subsequent deposition

17  testimony that he understood Mr. Paradis was going to represent him in a case against

18  the City.  *Id.* (Pansky Report, pp. 12-13, ¶ 12).  She also discusses the initial meetings

19  between Messrs. Paradis and Kiesel with the City attorneys' office also held in

20  December 2014 to discuss the City's retention of them to file an action against PwC.

21  *Id.* (Pansky Report, p. 14, ¶ 17).

22        Ms. Pansky ultimately summarizes her opinions in 12 paragraphs, concluding

23  in sum, based on the documents and deposition testimony provided to her, that Mr.

24

25

_____

26  [3]   Ms. Pansky's professional qualifications, set forth in her curriculum vitae, reflect
    her significant education and experience in legal ethics, and that she has been
27  qualified by numerous courts as a legal ethics and professional responsibility expert
    on many occasions over several decades.  *Id.* at 4 and Appendix A.
28

1    Paradis, in numerous ways, violated his ethical and fiduciary duties to the City and his
2    duty of candor to the State Court.  *Id*. (Pansky Report, pp. 147-50).

3         **E.    The Instant Complaint Is Filed On October 21, 2020**

4         Although the complaint, filed on October 21, 2020, contains seven "counts"
5    against the BGR Defendants, there are really only two claims against the BGR
6    Defendants -- for false light and defamation.[4]  ECF 5.  The complaint alleges that the
7    BGR Defendants "directed" Ms. Pansky and her firm to "draft the Pansky Report,
8    which painted Plaintiff in a false light as a 'rogue' actor, who colluded with Class
9    Counsel in the *Jones* Action and who suffered from irreconcilable conflicts."  ECF 5,
10   ¶ 58.  Mr. Paradis tellingly concedes that Ms. Pansky and her firm (as distinguished
11   from the BGR Defendants) drafted the Pansky Report.  *Id*. at ¶ 59.  There is nothing
12   in the Pansky Report indicating that any of the opinions set forth therein belong to the
13   BGR Defendants.

14        Given the forgoing, Mr. Paradis is left with nothing other than guess work
15   when he alleges in paragraph 102 of his complaint that even if the BGR Defendants
16   did not draft the Pansky Report, or render the opinions set forth therein, they
17   nevertheless somehow "caused" Ms. Pansky and her firm to draft the Pansky Report,
18   which thereafter was published by lodging it with the State Court on October 23,
19   2019.  ECF 5, ¶ 102.

20        The following four opinions from the Pansky Report are alleged to be
21   "materially false and misleading":

22             a.    By concurrently providing legal representation to Jones and
23                   the City without the informed written consent of either Jones

24

25   _____

26   [4]   The complaint consists of eighteen "Counts" against all defendants – including
     100 "doe" defendants.  Seven of the "Counts" are against the BGR Defendants and
27   are repetitive claims for defamation and false light alleging for example, "invasion of
     privacy by false light," based on actual malice in Count I and then based on
28   "negligence" in Count II.

or the City, Paradis violated his ethical and fiduciary duties under CRPC3-3102 [to] both Jones and the City.

b.   By secretly drafting or participating in the drafting of the *Jones v. the City* complaint and failing to reveal his actions to, and/or failing to obtain informed formal consent from the City, while serving as special counsel for the City, Paradis breached his ethical duties to the City and Jones to refrain from representation of conflicting interests.

c.   By repeatedly misrepresenting that once the City declined to consent to Paradis' and Kiesel's joint [or concurrent] representation of the City and an individual ratepayer against PWC, and that as soon as Jones made his decision to sue the City, Paradis's representation of Jones ended, knowing that he had continue[d] to provide legal services for Jones' benefit, Paradis violated his duty of candor and his duty to refrain from misleading his client, the court, and opposing counsel.

d.   By failing to advise their client, the City, that they were continuing to assist Jones in bringing [an] action against the City, Paradis violated his duty to the City to communicate significant events affecting the client's matter.

ECF 5, ¶ 46 (a)-(d); RJN Ex. 1 (Pansky Report, pp. 147-148, ¶¶ 1, 2, 4, 6).[5]

---

[5]   In paragraph 2 of the Pansky Report's summary of conclusions, Ms. Pansky opines that:

> Paradis' direct representation of Jones against COLA could very well be found by a court or the State Bar to constitute an unwaivable conflict of interest.

Mr. Paradis does not contend this statement was defamatory, acknowledging either that that his representation of Mr. Jones against the City is an unwaivable conflict of interest or that this was Ms. Pansky's opinion.

1    According to the complaint, the foregoing statements are false because in "all

2    actuality, . . . the acts undertaken by Mr. Paradis on behalf of the City in connection

3    with both the Jones Class Action and the *PwC* Action were undertaken at the

4    direction of, and with the knowledge and consent of the City."  ECF 5, ¶ 69.  Mr.

5    Paradis conveniently neglects to mention that the Pansky Report did not support his

6    contention that anyone affiliated with the City participated in, had knowledge of, or

7    condoned his unethical behavior.

8    Boiled down to its essence, it appears that Mr. Paradis's actual objection to the

9    Pansky Report is that she disbelieved the evidence he allegedly provided and

10   otherwise declined to excuse his misconduct.

11   **III.    MR. PARADIS'S SLAPP SUIT SHOULD BE STRICKEN**

12   **A.    Legal Standards Governing Anti-SLAPP Motions**

13   California's anti-SLAPP statute prohibits "strategic lawsuits against public

14   participation" (SLAPP actions), which are actions that are "brought primarily to chill

15   the valid exercise of the constitutional rights of freedom of speech and petition for

16   redress of grievances."  Cal. Civ. Proc. Code § 425.16(a).  The statute aims to

17   identify, early in the litigation process, "meritless first amendment cases aimed at

18   chilling expression through costly, time-consuming litigation."  *Metabolife Int'l, Inc.*

19   *v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  Although a state statute, the Ninth

20   Circuit has long held that a party "sued in federal courts can bring anti-SLAPP

21   motions to strike state law claims and are entitled to attorneys' fees and costs when

22   they prevail."  *Verizon Delaware, Inc. v. Covad Comms. Co*., 377 F.3d 1081, 1091

23   (9th Cir. 2004).

24   Adjudicating an anti-SLAPP motion is a two-step process.  First, the court

25   decides whether the "defendant has made a threshold showing that the challenged

26   cause of action is one arising from protected activity."  *Tensor Law P.C. v. Rubin*, No.

27   2:18-cv-01490-SVW-SK, 2019 WL 3249595, at *4 (C.D. Cal. Apr. 10, 2019).  The

28   defendant's burden in this regard is only to make a prima facie showing of protected

1    activity, which is "not an onerous one."  *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal.

2    App. 5th 574, 590 (2017) (citations omitted).  In evaluating whether the moving party

3    has made the threshold showing that the claims arise from conduct in furtherance of

4    free speech, the statute "shall be construed broadly."  Cal. Code Civ. Proc. §

5    425.16(a); *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1119

6    (1999) ("whenever possible, [courts] should interpret the First Amendment and

7    section 425.16 in a manner favorable to the exercise of freedom of speech, not its

8    curtailment"); *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089 (2001) ("under the

9    statutory scheme, a court must generally presume the validity of the claimed

10   constitutional right in the first step of the anti-SLAPP analysis . . . .").

11        Second, if the claim arises from protected conduct, the court "must then

12   determine whether the plaintiff has demonstrated a probability of prevailing on the

13   claim." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  Where, as here, "a defendant

14   makes a special motion to strike based on alleged deficiencies in the plaintiff's

15   complaint, the motion must be treated in the same manner as a motion under Rule

16   12(b)(6)," and no discovery is necessary or required before the Court can rule on the

17   anti-SLAPP motion.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

18   *Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018),

19   and *cert. denied sub nom.  Ctr. for Med. Progress v. Planned Parenthood Fed'n of*

20   *Am.*, 139 S. Ct. 1446 (2019).

21        In construing an anti-SLAPP motion under Rule 12(b)(6), courts accept as true

22   the allegations in the complaint, but are not bound to accept as true a legal conclusion

23   couched as a factual argument, "and a formulaic recitation of a cause of action's

24   elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  If a

25   plaintiff cannot meet its burden on this second step, "it has no possibility of success

26   on the merits" and the court should grant the motion to strike.  *Makaeff v. Trump*

27   *Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

28

Here, the Motion to Strike assumes, for argument sake, the truth of facts alleged in the complaint but challenges the legal sufficiency of those facts to state any viable claim for relief.  Specifically, because each claim for relief arises from protected activity, and Mr. Paradis therefore cannot establish a probability of prevailing on his claims, the complaint must be stricken and the action dismissed with prejudice.[6]

## B.    Mr. Paradis's Claims Arise From Protected Activity

California Code of Civil Procedure section 425.16(e) lists four categories of conduct that qualify as acts in furtherance of a person's right of speech or petition and are subject to a special motion to strike, the first two of which are at issue here: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . ."  Cal. Civ. Proc. Code §§ 425.16 (e)(1) - (2).  There can be no rational dispute that the Pansky Report qualifies as protected speech under these two independent categories.

An anti-SLAPP motion is appropriate when a complaint arises from any written or oral statement or writing made before a judicial body *or* in connection with an issue under consideration or review by a judicial body.  Cal. Civ. Proc Code §§ 425.16(e)(1) and (2).  A statement or writing that falls within the ambit of section 425.16, subdivision (e)(1) or (2) is protected whether or not it involves a public issue. *Briggs*, 19 Cal. 4th at 1123.

"[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as

---

[6]    Given the deficiencies in Mr. Paradis's legal theories "amendment would be futile under the federal standards, because no additional factual allegations could overcome the conclusion as a matter of law" that he has failed to state causes of action for defamation and false light and will never be able to do so. *See Tensor Law*, 2019 WL 3249595, at *13.

1   petitioning activity by the anti-SLAPP statute." *Finton Constr., Inc. v. Bidna & Keys,*

2   *APLC*, 238 Cal. App. 4th 200, 210 (2015) (citations omitted).  The filing of a

3   complaint and other pleadings in an action pending in California state or federal court

4   are protected.  *JSJ Ltd. P'ship v. Mehrban*, 205 Cal. App. 4th 1512, 1521 (2012)

5   (complaint protected); *Mandel v. Hafermann*, No. 20-cv-03668-JSC, 2020 WL

6   7025092, at *4 (N.D. Cal. Nov. 30, 2020) (filings made in connection with the TRO

7   proceeding protected).

8        Moreover, statements or writings made "in connection with civil litigation" are

9   also covered by the anti-SLAPP statute.  *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35

10  (2007).  A statement or writing is "in connection with" litigation if it "relates to the

11  substantive issues in the litigation and is directed to persons having some interest in

12  the litigation." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008)

13  (employer's letter to its customers about former fired employee's breach of contract

14  and misappropriation of trade secrets was sent in anticipation of litigation and

15  therefore was protected conduct under subsection (e)(2)).  *See, e.g.*, *Gallanis-Politis v.*

16  *Medina*, 152 Cal. App. 4th 600, 611 (2007) (claims based on statements made in a

17  client's investigation and report to its lawyers subject to an anti-SLAPP motion).

18        The Pansky Report, which was lodged with the State Court, undeniably was a

19  writing made before a judicial proceeding under Code of Civil Procedure section

20  425(e)(1).  It was also made in connection with an issue then under consideration by

21  the State Court within the meaning of Code of Civil Procedure section 425(e)(2).  The

22  State Court was (and is) investigating Mr. Paradis's and other attorneys' conduct to

23  determine the impact, if any, on the fairness of the *Jones* class action settlement

24  agreement.  See *supra* at II. B.  As established previously, the Pansky Report was

25  filed in response to the State Court's request that the City conduct an ethics inquiry

26  and undeniably concerned the State Court's continuing oversight jurisdiction and

27  authority over the *Jones* Settlement.

28

C.      **Mr. Paradis Cannot Establish A Probability Of Success On the Merits**

Under the second prong of the anti-SLAPP inquiry, the burden of proof shifts to Mr. Paradis "to establish a reasonable probability that [he] will prevail on [his] claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261.  Mr. Paradis's claims must be dismissed if he "presents an insufficient legal basis for [the claim]." *Id*.

Mr. Paradis cannot establish that there exists a reasonable probability he will prevail on his defamation or false light claims.  To establish these claims, a plaintiff must show a publication that was false, defamatory, unprivileged, and that has a natural tendency to injure or cause special damages.  *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017); *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 977 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020) (citations and quotation marks omitted) (When a false light claim is "coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.").

Here, Mr. Paradis's claims fail to state a claim for two alternative and independent reasons:  (1) the claims are barred by the absolute litigation privilege, or (2) the allegedly defamatory statements are merely opinions, not statements of fact.

### 1.      Each Claim Is Barred By The Litigation Privilege

California Civil Code section 47(b), which codifies the absolute litigation privilege, shields publications of every kind made in any judicial proceeding, "regardless whether the communication was made with malice or the intent to harm." *Grant v. U.S.*, No. 2:11-cv-00360 LKK, 2011 WL 2367656, at *8 (E.D. Cal. June 9, 2011) (citing *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002)).  The privilege applies to all communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

the litigation; and (4) that have some connection or logical relation to the action."
*Olszewski v. Scripps Health*, 30 Cal. 4th 798, 830 (2003).

The privilege applies to all torts with the sole exception of malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990); *Grant & Eisenhofer, P.A. v. Brown*, No. 17-cv-5968-PSG (PJWx), 2017 WL 6343506, at *5 (C.D. Cal. Dec. 6, 2017) (the breadth of the litigation privilege immunizes defendants from "virtually any tort liability (including claims for fraud)").  The privilege applies to claims for defamation and false light, which target litigation activity.  *See, e.g.*, *Kulkarni v. Upasani*, 659 F. App'x 937, 940 (9th Cir. 2016) (affirming anti-SLAPP dismissal of various claims - including defamation and intentional infliction of emotional distress - based on litigation privilege); *Lauren Sun v. Siemens AG*, No. CV 10-00174 SJO (SHx), 2010 WL 11549643, at *9 (C.D. Cal. Aug. 4, 2010), *amended sub nom. Sun v. Siemens AG*, No. CV 10-00174 SJO (SHx), 2010 WL 11549644 (C.D. Cal. Oct. 27, 2010) (motion to dismiss false light claim granted because defendants' communications were made pursuant to a federal investigation and protected by California's litigation privilege); *Dziubla v. Piazza*, 59 Cal. App. 5th 140, 308-312 (2020) (affirming anti-SLAPP dismissal of false light claim based on litigation privilege).

The litigation privilege reaches "testimony in court and statements made in pleadings," as well as "documents submitted in connection with motions."  *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 116-18 (2017).  It applies to attorneys' statements and filings made in the course of any judicial proceeding.  *Obos v. Scripps Psychological Assocs., Inc.*, 59 Cal. App. 4th 103, 108 (1997).  Notably, the litigation privilege applies to an expert's testimony and her investigation and report conducted in connection with or in anticipation of civil litigation.  *See, e.g.*, *Newberry v. Fiberglass Structural Eng'g Inc.*, 298 F. App'x 615, 616-17 (9th Cir. 2008) (expert engineer's report was protected by California's litigation privilege); *Moore v. Conliffe*, 7 Cal. 4th 634, 642-43 (1994) (expert witness

cannot be sued for statements made in the course of his or her testimony); *Wang v. Heck*, 203 Cal. App. 4th 677, 684 (2012) (litigation privilege precludes action against expert physician based on alleged inaccuracy of his report); *Ramalingam v. Thompson*, 151 Cal. App. 4th 491, 504 (2007) (expert accountant immune from liability pursuant to Civil Code § 47(b)); *Gootee v. Lightner*, 224 Cal. App. 3d 587, 595 (1990) (expert psychologist immune from tort liability based on the litigation privilege).  "Any doubt about whether the privilege applies is resolved in favor of applying it."  *Kashian*, 98 Cal. App. 4th at 913.

Once again, the Pansky Report is privileged.  It was lodged in the State Court by the BGR Defendants as counsel of record for the City to respond to the State Court's request that the City conduct an ethics investigation and as part of the State Court's investigation and evaluation of potential conflicts of interest and their impact, if any, on the reasonableness and fairness of the *Jones* Settlement.  See supra at II. B and D.  Paradis's disagreement with the opinions set forth in the Pansky Report is of no legal consequence.

Imagine the consequences if these protections did not exist.  No lawyer would dare file or lodge an expert report with a court.  No lawyer would dare publish an expert report during a deposition or use it during trial.  And certainly no lawyer would risk supporting a motion, such as the instant Motion, with disputed expert opinion testimony.  Will Mr. Paradis bring another lawsuit against the BGR Defendants because they "published" the Pansky Report in support of the instant Motion?

### 2.     The Allegedly Defamatory Statements Are Non-Actionable Opinions

The four statements Mr. Paradis identifies as defamatory are subjective opinions, which are "shielded by the First Amendment as statements that are not 'provable as false,' or statements that 'cannot reasonably be interpreted as stating actual facts.'"  *Resolute Forest Products v. Greenpeace Int'l*, 302 F. Supp. 3d 1005,1020 (N.D. Cal. 2017) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1,

19-20 (1990)).  The four supposedly defamatory statements contained in the Pansky Report (listed in Section II. E. above) boil down to one overriding opinion:  that Mr. Paradis had a conflict of interest and acted unethically.  Such subjective opinions are shielded from liability.

For example, in *Savage v. PG&E*, 21 Cal. App. 4th 434, 445 (1993), the court held defendant's statement that the plaintiff journalist had a conflict of interest was an opinion and not actionable.  The court noted:  "The determination of a conflict of interest involves instead an application of an ethical standard to facts, reflecting the exercise of judgment.  The judgment may, of course, be reasonable or unreasonable; but whatever quality may be attributed to it, the expressed belief in the existence of a conflict of interest does not imply an objective fact that can be proved to be true or false."  *Id.  See, also, e.g.*, *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of CA v. Yagman*, 55 F.3d 1430, 1440-41 (9th Cir. 1995) (attorney's statement that judge was "dishonest" did not imply any provably false fact); *Tasso v. Platinum Guild Int'l*, No. 94 CIV. 8288 (LAP), 1998 WL 841489, at *5 (S.D.N.Y. Dec. 3, 1998) (statements that plaintiff was "unethical, untrustworthy and unprofessional" and "incompetent" were protected); *James v. San Jose Mercury News, Inc.,* 17 Cal. App. 4th 1, 12, 19 (1993) (statement that plaintiff was "a member of a class of lawyers that engages in . . . sleazy, illegal, and unethical practice" was constitutionally protected opinion).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the BGR Defendants' special motion striking the complaint and award the BGR Defendants their attorneys' fees and costs.  *See Verizon Delaware*, 377 F.3d at 1091.  The BGR Defendants respectfully request that the amount of the fee award be reserved for later briefing following the hearing on this Motion.  *See Novel v. Los Angeles County Sheriff's Dept.*, No. 2:19-cv-01922-RGJ-AGR, 2019 WL 6448955, at *1 (C.D. Cal. Aug. 20,

2019) (court considered motion for attorneys' fees after grant of motion to strike under anti-SLAPP statute).

DATED:  March 8, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
   Guy C. Nicholson
   Kim S. Zeldin

By:   _/s/ Guy C. Nicholson_
         Guy C. Nicholson
Attorneys for Browne George Ross LLP, Eric M. George, and Maribeth Annaguey

1686401.9

-18-

Case No. 2:20-cv-09660

DEFENDANTS BROWNE GEORGE ROSS LLP, ERIC M. GEORGE, AND MARIBETH ANNAGUEY'S MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16